UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL P. O'DONNELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 14-cv-7591 |
| ) | |
| FEDERAL BUREAU OF ) | Judge John W. Darrah |
| INVESTIGATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael O'Donnell ("O'Donnell") filed an Amended Motion to Set Aside Forfeiture [17], pursuant to 18 U.S.C. § 983 and 28 U.S.C. § 1331. For the reasons stated below, the Motion is denied.

### BACKGROUND

O'Donnell brings this Motion to challenge the administrative forfeiture of assets that once belonged to his ex-wife, Tara Kersch. (Pl.'s Motion to Set Aside Forfeiture "MSAF" at 1.) O'Donnell and Kersch were divorced in 2009 in Georgia. (*Id.*) The Georgia court awarded O'Donnell child support and unpaid health insurance benefits for his minor child. (*Id.*) That court found Kersch in criminal contempt after she failed to make the payments despite having the ability to do so. (*Id.* at 2). Following the contempt order, Kersch filed for Chapter 13 bankruptcy in the Northern District of Illinois on April 19, 2010. (*Id.*) The bankruptcy court judge dismissed Kersch's proceeding due to false statements and misrepresentations about her assets. (*Id.*)

On January 14, 2011, in Vonore, Tennessee, the Federal Bureau of Investigation ("FBI") executed a search warrant based on suspicion of criminal bankruptcy fraud. (*Id.* at 3.) The FBI

opened a safe, with a key supplied by O'Donnell, and found $149,460.00 in cash, valuable jewelry appraised at $102,105.11, and other items, all belonging to Kersch. (*Id.*; Def's Resp., at 1.) The FBI seized the items for evidence in the criminal prosecution of Kersch for bankruptcy fraud. (MSAF, at 3; Def's Resp., at 2) The FBI sent actual notice of the forfeitures by certified mail to the known owner of the contents of the safe, Kersch, and to her parents, Robert and Cheryl Mundle, who possessed the safe at the time of the seizure. (Def's Resp., at 2.) The FBI also published public notice of the forfeiture in the *Wall Street Journal* for three consecutive weeks. (Def's Resp., at 2.) Although O'Donnell filed a citation to discover assets to issue from the United States Bankruptcy Court for the Northern District of Illinois to the FBI in March 2011, no claims or petitions contesting the forfeiture were filed by the deadline of June 13, 2011. (MSAF, at 3; Def's Resp., at 2.) After review by the Legal Forfeiture Unit at the FBI, the properties were declared forfeited on January 31, 2012. (Def's Resp., at 2). On October 15, 2013, the FBI received a claim from O'Donnell, in which he notified them that he was a "priority unsecured creditor" of Kersch and had a lien against her assets. (Def's Resp., at 3.)

Kersch was indicted in the Northern District of Illinois for criminal bankruptcy fraud on February 23, 2013. (*United States v. Tara Kersch*, 13-CR-169, Dkt #1; MSAF, at 3; Def's Resp., at 3.) Kersch filed a motion for return of property pursuant to Fed. R. Crim. P. 41(g), alleging improper forfeiture due to lack of notice. (13-CR-169, Dkt. #31; Def's Resp., at 3.) O'Donnell filed an opposition memorandum in addition to the government's opposition to the motion. (13-CR-169, Dkt. #36, 38; Def's Resp., at 3.) Judge Chang later denied Kersch's motion and found that she had received adequate notice of the forfeiture. (13-CR-169, Dkt. #39; Def's Resp., at 3-

4.) On April 24, 2014, Kersch pled guilty to concealing assets amounting to criminal bankruptcy fraud and was sentenced to sixteen months in a federal penitentiary. (13-CR-169, Dkt. #45, 46, 74; MSAF, at 3; Def's Resp., at 4.) The District Court did not identify any victims entitled to restitution as part of Kersch's criminal sentence. (13-CR-169, Dkt. #74; Def's Resp., at 4.)

## LEGAL STANDARD

When bringing a civil forfeiture action under the Civil Asset Forfeiture Reform Act ("CAFRA"), the government bears the burden of proving, by a preponderance of the evidence, that the seized property is subject to forfeiture. 18 U.S.C. § 983(c); *see also United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005).

## ANALYSIS

O'Donnell argues that he did not receive notice of the forfeiture proceedings. Under CAFRA, the Government is required to send written notice of forfeiture proceedings to interested parties no more than sixty days after the date of the seizure. 18 U.S.C. § 1983(a)(1)(A)(i). An interested party is defined as "any person who reasonably appears to have an interest in the property based on the facts known to the seizing agency before a declaration of forfeiture is entered." 28 C.F.R. § 8.2. An interested party who does not receive notice "may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property." 18 U.S.C. § 983(e)(1). The Government argues that they gave actual notice to parties that had an ownership interest in the seized property and published public notice in the *Wall Street Journal* for three consecutive weeks.

Essentially, the Government argues that O'Donnell would not have had standing to contest the forfeiture action even if they had given him actual notice of the proceedings. To properly contest a forfeiture action, one must have "a colorable interest in the property . . . which includes an ownership interest or a possessory interest." *United States v. $304,980 in United States Currency*, No. 12-cv-0044, 2013 WL 54005, *8 (S.D. Ill. Jan. 3, 2013) (quoting *United States v. $133,420 in U.S. Currency*, 672 F.3d 629, 637-38 (9th Cir. 2012)); *see also United States v. Stokes*, 191 Fed. Appx. 441, 444 (7th Cir. 2006) (indicating that an individual does not have constitutional standing to contest a forfeiture unless they have a sufficient interest in the seized property.)

O'Donell claims that he is an "innocent owner" under CAFRA. An innocent owner is a person "with an ownership interest in the specific property sought to be forfeited . . . who did not know of the conduct giving rise to forfeiture" or who "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(1). A general, unsecured interest in property does not entitle a person to the innocent owner defense. 18 U.S.C.A. § 983(d)(6)(B)(i). It is the moving party's burden to prove that he is an innocent owner by a preponderance of the evidence. *Id.*; *U.S. v. Funds in Amount of $127,300.00*, No. 08-c-6389, 2011 WL 3471507, *2 (N.D. Ill. Aug. 8, 2011).

O'Donnell asserts that he possesses an ownership interest in the seized assets in three ways: (1) he received a valid assignment of an ownership interest from Kersch, (2) he held a lien on the seized assets, and (3) he is the beneficiary of a constructive trust.

4

First, O'Donnell asserts that he is an owner of the specific property forfeited because he received a valid assignment of an ownership interest from Kersch. However, as the Government correctly points out, O'Donnell fails to provide any evidence supporting such an assignment. Moreover, the alleged assignment was signed by Kersch in February 2013, more than a year after the property had already been forfeited. (Def's Resp. at 8.) Kersch could not assign future interest in property that had already been forfeited. Therefore, O'Donnell carries no ownership interest arising from an assignment.

Next, O'Donnell asserts that he retains an ownership interest in the forfeited property because he held a lien on the seized assets. O'Donnell caused a citation to discover assets to be issued upon the FBI in March 2011. (MSAF at 10.; Def's Resp. at 9). The citation was removed to federal court in a separate proceeding, where it was dismissed by this Court. (*See* 14-cv-3745, Dkt. No. 20). As previously held, "sovereign immunity bars creditors from enforcing liens on Government property." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 257 (1999). O'Donnell does not have an ownership interest arising from a lien on the specific assets.

Finally, O'Donnell contends that he possesses an ownership interest in the seized assets because he is the beneficiary of a constructive trust under Georgia law. Georgia law provides that "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to the property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." *United States v. Ramunno*, 599 F.3d 1269, 1274 (11th Cir. 2010) (quoting GA. CODE ANN. § 53-12-93(a) (West

2010)[1]). Constructive trusts may be imposed in cases of fraud or after a breach of a fiduciary duty. *Amendola v. Bayer*, 907 F.2d 760, 762-63 (7th Cir. 1990) (citing *Suttles v. Vogel*, 533 N.E.2d 901, 904-05 (Ill. 1988)). However, even if O'Donnell were able to establish that he is the beneficiary of a constructive trust, this theory does not give O'Donnell standing to contest the forfeiture. *See United States v. All Funds on Deposit with R.J. O'Brien & Assoc.*, No. 11-C-4175, 2012 WL 1032904, *7-8 (N.D. Ill. March 27, 2012) (holding that a constructive trust did not give standing to claimants); *United States v. Approximately $133,803.53 in United States Currency Seized from Wash. Mut. Bank, N.A.*, 683 F.Supp.2d 1090, 1096-97 (E.D. Cal. 2010) (declining to impose a constructive trust because, under CAFRA, the definition of "owner" does not reference a beneficiary of a constructive trust).

O'Donnell cites to one case where a court held that a constructive trust was a sufficient ownership interest to contest forfeiture, *United States v. Currency $11,331*, 482 F. Supp. 2d 873, 880 (E.D. Mich. 2007). However, in that case a constructive trust was created where a father had given money to his daughter to pay her various debts, but the money was seized in connection with an illegal drug transaction. *United States v. Currency $11,331*, 482 F. Supp. 2d at 882-83. The court held that the money was not intended for personal use and that equity demanded the father receive an equitable trust in the specific funds. *Id.* There is no indication that O'Donnell gave Kersch any of the specific property for any purpose. O'Donnell does not have an ownership interest in the forfeited property arising from a constructive trust.

Furthermore, O'Donnell does not claim that he is a secured creditor as to the forfeited property. (Pl.'s Reply Br. at 2). He contends that he holds status as a priority unsecured

---

[1] The code authorizing constructive trusts has subsequently been moved to GA. CODE ANN. § 53-12-132(a) (West 2015).

creditor. (*Id.*) Whether O'Donnell was a *priority* unsecured creditor is immaterial to his alleged ownership interest in the forfeited property, as § 983(d) does not apply to unsecured creditors. A state court's child support order does not make an unsecured creditor an "owner" as to their debtor's forfeited property. *United States v. 38,852.00 in United States Currency*, 328 F.Supp.2d 768, 769 (N.D. Ohio 2004); *see also United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003) ("a general *in personam* judgment [is] not a secured interest against any particular asset.")

Because O'Donnell cannot show that he had a valid ownership interest in the specific property, he would not have had standing to claim the forfeited assets. Therefore, his Amended Motion to Set Aside the forfeiture is denied.

## CONCLUSION

For the reasons discussed above, Plaintiff's Amended Motion to Set Aside Forfeiture [17] is denied.

Date:  April 16, 2015  

JOHN W. DARRAH
United States District Court Judge